UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:22-cr-90 (AWT) |
| | : | |
| v. | : | |
| | : | |
| JOSEPH AMADEO | : | January 10, 2023 |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S**
**MOTION TO DISMISS THE INDICTMENT**

The defendant, Joseph Amadeo, asks this Court to dismiss the indictment in this case, which charges him one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1) and carries a five-year mandatory minimum sentence, because he claims that sentence constitutes cruel and unusual punishment under the Eighth Amendment. That motion should be denied for two reasons. *First*, the motion is not ripe. Amadeo has not pleaded guilty or been found guilty following trial. Without a factual determination of the full scope of Amadeo's conduct, this Court cannot determine whether a five-year minimum mandatory sentence is so disproportionate to his conduct as to violate the Eighth Amendment. *Second*, Amadeo's claim fails on the merits. A sentence of at least five years is appropriate for Amadeo, a convicted sex offender who went on the dark web and downloaded thousands of images and videos depicting the sexual abuse of children as young as infants. As discussed below, Amadeo's motion should be denied.

I.      **FACTUAL BACKGROUND**

    A.    **Amadeo's Previous Conviction**

Amadeo is a convicted sex offender and is subject to the Connecticut sex offender registry. In 2013, Amadeo was convicted of risk of injury to a child in violation of Connecticut General Statutes Section 53-21(a)(1) for downloading and sharing child pornography on a peer-to-peer file

sharing network ("P2P").

In 2010, Amadeo was interviewed by Connecticut State Police ("CSP") detectives in connection with the investigation that led to his 2013 risk of injury conviction. At the time, he was living his parents, in the same residence where currently resides. During the interview, Amadeo admitted to using two computers—including one computer he built himself—to access P2P networks and download and share child pornography. Amadeo admitted to being sexually aroused by child pornography. Amadeo stated that the youngest child he had seen pornographic images of "was probably an infant." Amadeo told the detectives, "*I like the excitement of knowing that I can look at these types of photos [and] can get away with it.*"

CSP detectives identified 495 image files and 194 video files of suspected child pornography on the hard drive of a computer seized during the execution of the search warrant at Amadeo's residence. As a result of this conduct, on December 20, 2013, Amadeo was convicted of risk of injury to a child in violation of Connecticut General Statute 53-21(a)(1) and sentenced to 10 years jail, all of which was suspended, and 5 years' probation.[1]

B.  **Initiation of the Investigation**

In April 2020, Homeland Security Investigations ("HSI") New Haven began investigating Amadeo, based upon information that a user of the internet at Amadeo's residence, was linked to an online community of individuals who regularly send and receive child pornography via a hidden service website that operated on the Tor anonymity network (aka the dark web).

As part of HSI's investigation, on September 15, 2020, a court authorized HSI to install

---

[1] Importantly, Amadeo is facing lower mandatory minimum sentence than otherwise could have applied. Although the facts of Amadeo's prior offense involved the possession of the child pornography, it was resolved with a guilty plea to risk of injury. Amadeo's guilty plea was to a particular subsection of the risk of injury statute that does not trigger the enhanced mandatory minimum penalties under 18 U.SC. § 2252A(b)(1). But for this result, Amadeo could have been facing a mandatory minimum of 15 years' imprisonment in this case.

and use a pen register/trap and trace device ("PRTT") to record, decode and capture all dialing, routing, addressing, and signaling information associated with each communication to or from the Internet service account for Amadeo's residence. Based on the information provided by the PRTT and publicly available information, investigators were able to determine that from September 18, 2020 to October 16, 2020, an Internet user at Amadeo's residence accessed or connected to the Tor network on approximately 120 separate occasions.

      C.      **Search of Amadeo's Residence**

On March 2, 2021, HSI agents, accompanied by local and state police, executed a warrant to search Amadeo's residence. Amadeo's parents answered the door and indicated that Amadeo was in the basement, which served as his bedroom. Amadeo was found in the basement shortly thereafter. He declined to speak to investigators.

During the execution of the warrant, investigators located and seized numerous items including computers, thumb drives, DVD/CD's, external hard drives, and cellular phones. The majority of the seized storage media was found in the basement.

Investigators also identified a wooden dresser in a room on the main floor of the residence. The dresser, along with clothes and other furniture were located in a section of the room that had been partitioned off by a curtain. Amadeo's father said that the dresser and other items in that section of the room belonged to Amadeo and had been brought upstairs due to water issues in the basement. In the dresser, investigators located a large Ziplock type bag filled with little girls' underwear and what appeared to be crumpled up paper towels with bodily fluid. The dresser also contained a 7-pack package of size 6 girls "My Little Pony" underwear that had been opened and

was missing sets of underwear.[2] Additional pairs of girl's underwear was found commingled with multiple sex toys, which included a female sex doll (headless torso). The underwear appeared to have bodily fluids on it.

A forensic examination of the seized devices began after the execution of the search warrant. The examination unearthed Amadeo's very extensive collection of child pornography, as well as evidence of Amadeo's receipt of child pornography using the internet. Amadeo's collection of child pornography was comprised of thousands of photos and videos depicting the sexual abuse, including incest, of young girls, boys, and infants,[3] including sadistic or masochistic conduct or other depictions of violence, and children engaged in sexual acts with animals. The forensic examination of Amadeo's devices also revealed multiple graphic writings discussing the sexual abuse of children by babysitters and family members.

### D. Identification of Victim

Investigators identified an adult female who alleged that Amadeo sexually assaulted her when she was a minor. The adult female (the "Victim") is approximately 2-3 years younger than Amadeo. The Victim's family and Amadeo's family were friends. During an interview with investigators, the Victim disclosed that when she was approximately 9 or 10 years old, Amadeo sexually assaulted her during a family camping trip.

On multiple occasions when she was approximately 12 years old, she and a female family member, who was approximately 9 years old ("family member"), slept overnight at Amadeo's residence. During these occasions the Victim and her family member would sleep in Amadeo's

---

[2] According to the size chart for the underwear, a size 6 is recommended for a 44 to 49 lb child, which is in within the average weight range for a 6-year-old girl.

[3] Descriptions of some of the images and videos are included in the Complaint. *See* Doc. #1.

brother's room. On more than one occasion, Amadeo entered the room at night and attempted to roll down her pants and her family member's pants.

When she was approximately 17 or 18 years old, Amadeo attended a party at her family's home. At one point during the party, she went upstairs to her bedroom to retrieve something, and she caught Amadeo going through her underwear drawer. This happened again approximately one year later.

E.  **Psychological Evaluation and Additional Information**

At the request of his counsel and in connection with this case, Amadeo was evaluated by Dr. George Geysen, a clinical and forensic psychologist. In his motion, Amadeo refers to Dr. Geysen as an expert, but he has not been qualified as an expert in this case. *See* Def. Mtn. at 1. Dr. Geysen previously evaluated Amadeo in 2012, in connection with his previous conviction. Def. Ex. A at 2. The following is based on the information contained in Dr. Geysen's report, dated February 4, 2022, *see id.*, and information that the Government has learned over the course of the investigation.

Amadeo graduated high school in 2002. *Id.* at 3. In 2010, Amadeo's mother told CSP detectives that he was "a couple credits away from earning an associate's degree in electrical engineering." At some point during his adulthood, Amadeo was diagnosed with "Asperger's Syndrome," which his mother described to CSP detectives in 2010 as a "high functioning form of Autism."

Dr. Geysen's report acknowledges that Amadeo has a "high average IQ of 112" but claims that Amadeo was "unable to sustain employment." *Id.*  Instead, he "stayed up [] all night playing video games." *Id.*  Contrary to this opinion, Amadeo held a job for 6 years.  From October 2013, until December 2019, Amadeo began working at a Dunkin' Donuts near his residence. In his

5

report, Dr. Geysen stated that Amadeo resigned from his position after "clashing with management." *Id.* However, this is inaccurate. Amadeo's employment records from Dunkin' Donuts make clear that he did not resign; he was fired in December 2019 after not showing up to work. Despite maintaining employment at Dunkin' Donuts during the entirety of his state probation, he was terminated almost one year to the day that his probation was complete. An "Employee Warning Notice" from August 2019 stated that Amadeo had "no respect for managers. His attitude is toxic and affect[s] other employee[s]. His quality of work is poor." Upon information and belief, Amadeo has not been employed since being fired from Dunkin' Donuts.

Notably, Dr. Geysen stated that ***Amadeo does not attend counseling and has not attended counseling consistently since he completed probation in 2018***. *Id.* at 3 and 4. However, on June 3, 2021, during Amadeo's initial appearance, it was represented to Judge Merriam that Amadeo was engaging in therapy via telehealth. *See* Doc. #36 Tr. of 6/3/2021 Initial Appearance at 19. Because of this representation, Judge Merriam permitted Amadeo to have access to internet-capable devices equipped with monitoring software. *See* Doc. #36 Tr. of 6/3/2021 Initial Appearance at 19.

According to Dr. Geysen, Amadeo has been diagnosed with "autism spectrum disorder (ASD) and attention deficit hyperactivity disorder (ADHD). In addition, he displays significant anxiety and symptoms of major depression and obsessive-compulsive disorder.[4]" Dr. Geysen stated that Amadeo has features of "schizoid personality disorder and paraphilic disorder." Def Ex. A at 7. The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision ("DSM-5-TR"), which is the latest version of the DSM, defines a paraphilic disorder as a "paraphilia that is currently causing

---

[4] It is unclear if Dr. Geysen has diagnosed Amadeo with these conditions based solely on his own evaluation or if he is relying on diagnoses that were made by other providers.

distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others." DSM-5 TR 780. There are multiple types of paraphilic disorders and pedophilic disorder is one type. The Government understands Dr. Geysen's opinion to specifically be that that Amadeo has features of pedophilic disorder. As defined by the DSM-5-TR, the diagnostic criteria for pedophilic disorder includes, "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger) over a period of at least 6 months." DSM-5 TR at 792.

It is apparent from Dr. Geysen's report that Amadeo lacks any remorse for his actions or the harm that he has caused his numerous victims. Dr. Geysen noted that Amadeo "downplayed his current legal situation by pointing out incongruities and disparities between greater societal issues, e.g., George Floyd over those involved in his arrest." Def. Ex. A at 6.

Dr. Geysen determined that "the risk Mr. Amadeo presents for continued illegal use of the internet is average and unchanged from his prior (2012) arrest." *Id.* at 7 Further, Dr. Geysen found that "[w]ith respect to his sex offense recidivism, Mr. Amadeo's risk to engage in a future Internet-based offense, if unmonitored, appears unchanged when compared with that at the time of his prior (2013) conviction. His behavioral pattern leading to his May 2021 arrest had broadened since his prior arrest but was identical in many respects." *Id.* at 8. Dr. Geysen states that Amadeo has "an intense and detached preoccupation with collecting pornographic images and videos of children" and that "unless Mr. Amadeo is restricted from the internet, he will continue to access pornographic images and videos of children." *Id.* at 7-8.

In the report, Dr. Geysen made a number of recommendations for Amadeo to follow. Those recommendations include the following:

- Dr. Geysen determined that "Amadeo requires medical care and psychiatric treatment for his psychiatric disability and to address his sexual misconduct and to monitor, supervise and manage his sex offense risk," and identified facilities offering "inpatient treatment for persons requiring psychiatric care and supervision in an enhanced security setting."

- "Amadeo should receive careful and thorough psychiatric evaluation in order to consider pharmaceutical measures designed to address his attentional deficits, his mood disorder and anxiety and, possibly, to help diminish his own sexual urges and desires.

- "Amadeo should receive sex offender treatment focusing on helping him appreciate his own prosocial sexual needs, desires and urges. This treatment should also educate him about responsible ways in which to meet these desires and needs and to instill some measure of victim empathy and factors which may signify a relapse."

*Id.*

Critically, it is the Government's understanding that Amadeo has not followed any of Dr. Geysen's recommendations or proposed an alternative plan. However, the Bureau of Prisons is able to provide Amadeo with these services. In fact, the Bureau of Prisons indicates its facilities provide care for individuals with a variety of mental health issues, including ASD.

## II.     PROCEDURAL BACKGROUND

On May 28, 2021, a federal criminal complaint and arrest warrant were signed charging Amadeo with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). Doc. #1. Amadeo's initial appearance was held a few days later on June 3, 2021, and he self-surrendered at that time.

On May 5, 2022, a federal grand jury returned an indictment charging Amadeo with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). Doc. #67. Amadeo has remained on pretrial release during the pendency of this case.

Over the course of this case, there has been extensive litigation because Amadeo has repeatedly insisted, over the Government's objection, on having a minor family member stay at his residence for weeks on end and attending family gatherings where minors were present. The Court prohibited the minor from staying overnight at his residence, concluding that having the minor stay overnight would raise significant safety concerns, but allowed supervised visits with

minors at the home and at family gatherings." *See* Docs. 47, 65.

### III. LEGAL ARGUMENT

#### A. Amadeo's Motion Is Not Ripe

Amadeo seeks a ruling on the constitutionality of the five-year mandatory minimum sentence pursuant to U.S.C. § 2252(a)(2) and (b)(1), even though he has not pleaded guilty or been convicted of the offense following trial. "Ripeness is a constitutional prerequisite to [the] exercise of jurisdiction by federal courts." *United States v. Fell*, 360 F.3d 135, 139 (2d Cir. 2004) (internal quotation marks omitted). "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Cheffer v. Reno*, 55 F 3d 1517, 1524 (11th Cir. 1995); *see United States v. Quinones,* 313 F.3d 49, 57–58 n. 5 (2d Cir. 2002) (noting same).

"The ripeness doctrine prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004) (internal quotations and brackets removed). The Second Circuit has "long recognized that a claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020) (internal quotation marks and brackets omitted). "Unlike a purely legal question that is eminently fit for judicial review, factual disputes beyond the prescience of the court are subject to abstract disagreements over matters that are premature for review." *Id.* (internal quotation marks and brackets omitted). "In addressing any and all ripeness challenges, courts are required to make a fact-specific determination as to whether a particular challenge is ripe by deciding whether (1) the issues are fit for judicial consideration, and (2) withholding of consideration will cause substantial hardship to the parties." *Balon*, 384

F.3d at 46 (internal quotations and brackets removed).

Applying the first part of the test, the imposition of the sentence rests upon a contingent future event, and is therefore, not ripe for consideration. Amadeo has not pleaded guilty and has not gone to trial. Accordingly, a factual determination as to his guilt or innocence has not been made. Without this factual determination, this Court cannot determine if a sentence of at least five-years in custody is proportional to his conduct. S*ee, e.g.*, *United States v. Sadiki-Yisrael*, No. 116CR145TWTJKL3, 2018 WL 5091914, at *10 (N.D. Ga. May 24, 2018), report and recommendation adopted, No. 1:16-CR-145-3-TWT, 2018 WL 5085687 (N.D. Ga. Oct. 18, 2018) (Defendant's "argument based on the Eighth Amendment is not ripe because his criminality has not been established. . . . [Defendant] has not pled or been found guilty, and those events may never occur. Accordingly, [Defendant's] argument is premature at this stage in the proceedings."). *United States v. Williams*, No. 6:13-CR-26-ORL-36, 2014 WL 117091, at *5 (M.D. Fla. Jan. 13, 2014) (concluding that a defendant's Eighth Ame6ndment challenge to a ten-year mandatory minimum sentence was not ripe where he had not yet stood trial or entered a plea). *United States v. Brull*, No. 12-10226-01-EFM, 2013 WL 1092885, at *1 (D. Kan. Feb. 22, 2013) ("Defendant asserts that the minimum sentence prescribed for the alleged offenses is unconstitutionally disproportionate to the crimes in violation of the Eighth Amendment. . . . Because Defendant has not yet stood trial or entered a plea, his pre-conviction challenge under the Eighth Amendment is not yet ripe."). *United States v. Caparotta*, 890 F. Supp. 2d 200, 211 n.12 (E.D.N.Y. 2012) ("Although defendant states that he 'is at the low end of the child pornography world' . . . defendant makes this motion prior to entering a guilty plea or proceeding to trial and prior to his sentencing. Because no Presentence Report has been issued and there are no facts pertaining to defendant's sentencing before the court, a decision as to whether the five-year mandatory minimum sentence

is unconstitutional under the Eighth Amendment as cruel and unusual punishment as applied to him is not yet ripe for adjudication.") *United States v. Warren*, No. 09-CR-2059 BB, 2010 WL 11619337, at *1 (D.N.M. July 23, 2010) ("Defendant vigorously argues that a minimum five-year sentence is unconstitutionally disproportionate to the receiving offenses he is accused of committing. . . . Defendant has not yet been, and may never be, tried or convicted of any offense. . . . [T]his fact renders Defendant's motion premature at this time.").

Amadeo is asserting an "as applied" challenge to the length of a term-of-years sentence. This requires the Court to consider "*all of the circumstances of the case* to determine whether the sentence is unconstitutionally excessive." *See Graham v. Florida,* 560 U.S. 48, 59 (2010) (emphasis added). Prior to a trial or a guilty plea, factual development of these circumstances is insufficient. Further, Amadeo's basis for the dismissal of the indictment rests exclusively on his alleged diagnoses, and the only evidence that he has provided is Dr. Geysen's report. The Government has not had the opportunity to test the veracity of the report and more generally, Amadeo's claimed diagnoses.[5]

Under the second part of the test, Amadeo has not raised any hardship that he would suffer should the Court wait until sentencing to determine the Eighth Amendment challenge. In sum, both ripeness considerations indicate that Amadeo's Eighth Amendment challenge is not ready for judicial review. This Court should deny the claim pending sentencing.

    **B.**    **Even If Amadeo's Motion Is Ripe, The Motion Should Be Denied Because The 5-Year Mandatory Minimum For Receipt Of Child Pornography Does Not Violate The Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S.

---

[5] For example, Dr. Geysen's report lists multiple other reports prepared by other providers that he reviewed. But the Government has not received these reports.

11

Const. amend. VIII. "Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense." *Graham*, 560 U.S. at 59 (internal citation, quotations, and brackets removed). However, "federal courts should be reluctan[t] to review legislatively mandated terms of imprisonment, and [] successful challenges to the proportionality of particular sentences should be *exceedingly rare*." *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (per curiam) (internal quotation marks omitted) (emphasis added); *see United States v. Roque*, 628 Fed. Appx. 65, 66 (2d Cir. 2016) ("[T]he Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime, and in a noncapital case, it is 'exceedingly rare' to uphold a claim that a sentence *within the statutory limits* is disproportionately severe.") (internal quotations and citation omitted) (emphasis in original)).

There are two ways to challenge a sentence's proportionality: (1) by asserting an as-applied challenge that the length of a term-of-years sentence is disproportionate "given all the circumstances in a particular case;" and (2) by asserting a categorical challenge that an entire class of sentences is disproportionate based on the "nature of the offense" or "the characteristics of the offender"' *Graham*, 560 U.S. at 59-60.

Amadeo asserts an as-applied challenge. *See* Doc. #103, Def. Mtn. at 1. In regard to such challenges, "the Eighth Amendment 'contains a narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime." *Graham,* 560 U.S. at 60 (quoting *Harmelin v. Michigan,* 501 U.S. 957, 997, 1000-01 (1991).

> In making a case-particular assessment of proportionality, the Court has employed a two-step analysis, first "comparing the gravity of the offense and the severity of the sentence." [*Graham v. Florida,* 130 S.Ct.] at 2022. . . . . the Court has observed that it will be "'the rare case in which this threshold comparison ... leads to an

12

> inference of gross disproportionality.'" *Id.* (quoting *Harmelin v. Michigan,* 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring) (first alteration in *Graham* omitted)). Should such an inference arise, however, the second step of the analysis requires a court to "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id*  Only "[i]f this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate' " will the sentence be deemed "cruel and unusual." *Id.* (quoting *Harmelin v. Michigan,* 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring) (alterations in original)).

*United States v. Reingold*, 731 F.3d 204, 211 (2d Cir. 2013).

### 1. The Gravity of the Offense

The instant case is not the "rare case" that would lead to an inference of gross disproportionality based on a threshold comparison of the gravity of the offense and the severity of the sentence. *See  Id. at* 204 (rejecting an Eighth Amendment proportionality challenge to a five-year mandatory minimum sentence for distribution of child pornography); *United States v. Cobler*, 748 F.3d 570, 579 (4th Cir. 2014) (rejecting an Eighth Amendment proportionality challenge to a sentence of 120 months for producing and possessing child pornography).

Amadeo is charged with receipt of child pornography, which is well recognized as a very serious offense. As the Second Circuit stated, "Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." *Reingold*, 731 F.3d at 216.

The gravity of Amadeo's offense is only exacerbated by the facts of the case. Amadeo claims that he is not a "sexual predator," but the evidence in this case supports the fact that he is. In his motion, Amadeo withholds the very important fact that this is not his first offense. He is a registered sex offender and the facts of his previous conviction are very similar to those in the

instant case. However, in this case, his conduct is worse and he has only grown more sophisticated with time. In his first case, he used a P2P, but in this case, he was on the dark web. Although Amadeo attempts to paint himself as a victim, he is anything but. Instead, what is factual is that Amadeo has victimized countless children. The search of Amadeo's electronic devices revealed thousands of images and videos depicting the horrific sexual abuse of children as young as toddlers. He possessed writings concerning the same.

Further, numerous pairs of underwear, sized for a 6-year-old girl, covered in what was likely Amadeo's own bodily fluid were found commingled with a sex doll (head less torso) and other sex toys. The investigation has identified the Victim, who stated that Amadeo sexually assaulted her when they were minors. Notably, Dr. Geysen's report omits mention of this very important information.

In his motion, Amadeo attempts to paint himself almost as a harmless asexual person, and disturbingly compares his action of amassing thousands of images and videos depicting the sexual abuse of child to his collection of comic books and music files.

Amadeo claims that he has "severe psychiatric disabilities," primarily ASD, and accordingly cannot go to prison because of that. Yet, in the approximately 19 months since his arrest, Amadeo has failed to follow to the recommendations of his own evaluating psychologist. Amadeo is not in treatment and is not on mental health medication, despite his own repeated claims of psychiatric disabilities and suicidality. One would surmise, that if Amadeo's claims were true, at a minimum, he would be in an inpatient facility. As a matter of principal, the fact that Amadeo has failed to adhere to his own psychologist's recommendations, should foreclose his ability to make the argument that he should not go to prison because of his alleged diagnoses. BOP is well-equipped to house Amadeo. BOP regularly houses offenders, including sex offenders, with ASD

and other diagnoses. *See United States v. Dolehide*, 663 F.3d 343, 349 (8th Cir. 2011) (finding that 135-month sentence for defendant with ASD was substantively reasonable, rejecting defendant's argument that he will likely be a victim in prison, and noting that "Bureau of Prisons has adequate facilities and programs to deal with and treat [defendant] during his incarceration.").

### 2. The Severity of the Sentence is Not Grossly Disproportionate to the Gravity of the Offense.

The instant case is not the "rare case" that would lead to an inference of gross disproportionality based on a threshold comparison of the gravity of the offense and the severity of the sentence. *See Reingold,* 731 F.3d at 204 (rejecting an Eighth Amendment proportionality challenge to a five-year mandatory minimum sentence for distribution of child pornography); *Cobler,* 748 F.3d at 570 (rejecting an Eighth Amendment proportionality challenge to a sentence of 120 months for producing and possessing child pornography).

The severity of child pornography laws reflect the immense social harm caused by Amadeo's crimes. The Second Circuit has repeatedly acknowledged that

> "[I]t is difficult, if not impossible to halt" the sexual exploitation and abuse of minors by pursuing only the producers of child pornography. *New York v. Ferber,* 458 U.S. at 759–60, 102 S.Ct. 3348. Thus, the Supreme Court has acknowledged that "[t]he most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing *severe criminal penalties* " on all persons in the distribution chain. *Id.* at 760, 102 S.Ct. 3348 (emphasis added). With precisely this objective in mind, *see* H.R. Conf. Rep. 108–66, at *28 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683 (quoting *New York v. Ferber,* 458 U.S. at 760, 102 S.Ct. 3348), Congress, in 2003, established a graduated sentencing regime for crimes involving child pornography, with any knowing receipt or distribution of child pornography transmitted in interstate or foreign commerce punishable by a prison term of "not less than five years and not more than 20 years" in prison. 18 U.S.C. § 2252(b)(1).

*Reingold*, 731 F.3d at 218–19.

Amadeo argues that the five-year mandatory minimum sentence for receipt of child pornography violates the Eighth Amendment's ban on cruel and unusual punishment as applied to him. At the core of his argument is his belief that ASD, which he appears to present as a mitigating factor, makes any sentence with a mandatory term of imprisonment unconstitutional. Amadeo has failed to identify a single case in which a mandatory minimum of imprisonment was found to violate the Eighth Amendment because the defendant had ASD or another similar diagnosis.[6] In fact, the case law supports the opposite conclusion. *See United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (Defendant's mandatory minimum sentence of 15 years' imprisonment under Armed Career Criminal Act following a conviction for felon in possession of firearm did not violate Eighth Amendment, although defendant had diminished mental capacity, his mental capacity did not warrant a finding of gross disproportionality); *United States v. McDade*, 399 Fed. Appx. 520, 524-25 11 Cir. 2010) (240 month sentence for a defendant with diminished capacity convicted of production of child pornography did not plainly violate the Eighth Amendment); *United States v. Shore*, No. CR 17-502, 2020 WL 3791550, at *8 (E.D. Pa. July 7, 2020) (Holding that the a defendant with ASD's 15-year mandatory minimum sentence for manufacturing child pornography in violation of 18 U.S.C. 2251(a) did not violate the Eighth Amendment); *see also. Reingold*, 731 F.3d at 220 ("An adult defendant's immaturity may mitigate his moral culpability, but it does not reduce the harmful effects of his crime, which, as we have explained, are properly

---

[6] Defendant relies on a recent district court decision in *United States v. Knott,* 2022 U.S.Dist. LEXIS 198553 (M.D.AL November 1, 2022) in which the district court allowed a defendant with ASD to serve his sentence for possession of child pornography in home confinement. That case is procedurally and factually distinct from the present case. First, the court did not find an Eighth Amendment violation in *Knott*, but rather imposed home confinement based on a variance *after* a full review of the offense conduct and a hearing with testimony from two experts. Second, Knott's conduct was far less severe than the instant case. Knott, who had no prior criminal history, was described as having "minimal" engagement with child pornography. *Id* at *9. His offense was limited to two instances in which he downloaded the same four files advertised as a single collection. *Id* In total, he opened only 11 images and videos.

16

viewed as quite serious in cases of distribution of child pornography. Indeed, where the sentence at issue for such a serious crime is a minimum prison term of five years, the punishment is not so severe as to permit us to infer gross disproportionality from Congress's decision to mandate its imposition on all adult defendants, without regard to their relative maturity."). Indeed, the Sixth Circuit stated plainly that "[i]mposing a mandatory minimum sentence on a defendant with limited mental capabilities does not violate the Eighth Amendment ban against cruel and unusual punishment." *United States v. Tucker*, 204 Fed. Appx. 518, 521 (6th Cir. 2006).[7]

## CONCLUSION

Amadeo's motion should be denied because it is not ripe. Even if this Court addresses the motion now, it should be denied because the relationship between the gravity of the child pornography receipt offense alleged in the indictment and the severity of the five-year mandatory minimum sentences fails to create the threshold inference of gross disproportionality required to maintain a successful as-applied Eighth Amendment challenge. For all of these reasons, Amadeo's motion should be denied.

---

[7] Relatedly, numerous Courts of Appeals have found that sentences above the five-year mandatory minimum are substantively reasonable in cases where defendants have ASD. *See, e.g., United States v. Ziska*, 602 Fed. Appx. 284, 292-93 (6th Cir. 2015) (upholding 180-month sentence as substantively reasonable for defendant with ASD convicted of distribution and possession of child pornography where district court noted "the seriousness of [defendant's] offense," "that the expert report referenced the high risk of recidivism for non-contact offenses because [defendant] had failed to fully admit to his condition," and that "[the court] had to think about the victims of pornography, too."); *Dolehide*, 663 F.3d at 343 (8th Cir. 2011)(upholding 135-month sentence for possession of child pornography and rejecting argument for downward variance due to ASD); *United States v. Beasley*, 562 Fed. Appx. 745, 750-751, 754 (11th Cir. 2014) (upholding 115-month sentence as substantively reasonable for defendant with ASD convicted of receipt and possession of child pornography); *United States v. Sindoni*, 510 Fed. Appx. 906, 907 (11th Cir. 2013) (upholding 200-month sentence for distribution of child pornography as substantively reasonable for 22-year old defendant with ASD, who was facing a 180-month mandatory minimum sentence because of a prior state child pornography conviction, in light of "the seriousness and scope of his offense conduct, his prior conviction for possessing child pornography, and the need to afford adequate deterrence and protect the public[.]"); *United States v. Mandli*, 278 Fed. Appx. 955, 956 (11th Cir. 2008) (affirming 78-month sentence as substantively reasonable for defendant with ASD convicted of possession of child pornography).

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

_____/s/_____
AMANDA S. OAKES
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct30310
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: (203) 821-3700
amanda.oakes@usdoj.gov


NANCY V. GIFFORD
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct16324
450 Main Street, Room 328
Hartford, CT 06103
(860) 947-1101

CERTIFICATE OF SERVICE

      I hereby certify that on January 10, 2023, a copy of the foregoing document was filed electronically via CM/ECF. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

                                      Amanda S. Oakes
                                      Assistant U.S. Attorney