UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                :

           vs.                              :   CRIMINAL NO. 3:22-CR-90 (AWT)

JOSEPH AMADEO                           :   January 31, 2023

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS INDICTMENT**

The Defendant, Joseph Amadeo, submits this reply memorandum in further support of his motion to dismiss the indictment (ECF No. 103), and to respond to certain points raised in the government's response (ECF No. 114).  In limiting his reply to these points, Mr. Amadeo does not waive any argument previously made.

**I.**       **The 5-Year Mandatory Minimum Sentence, as Applied to Mr. Amadeo, Violates the Eighth Amendment.**

The government has not refuted that a 5-year mandatory-minimum term of imprisonment is cruel and unusual as applied to Mr. Amadeo in the light of his Autism Spectrum Disorder (ASD).

The government argues that the severity of this punishment is not grossly disproportionate to "[t]he gravity of Amadeo's offense," which the government claims is "exacerbated by the facts of the case." ECF No. 114 at 13.  Most of the government's "facts," however, are not related to the offense conduct in this case.  In particular, the government relies mainly on Mr. Amadeo's prior conviction from 2013, allegations from a family friend who is not a victim of any conduct charged in this case, and certain items seized from the home that Mr. Amadeo shares with his parents.

On December 20, 2013, more than nine years ago, Mr. Amadeo entered a plea of *nolo contendere* to one count of risk of injury to a minor in violation of Conn. Gen. Stat. § 53-21(a)(1), which penalizes "willfully or unlawfully caus[ing] or permit[ting] any child under the age of sixteen

years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or do[ing] any act likely to impair the health or morals of any child."[1]  This is a very different crime than the one charged in this case.

Moreover, despite the government's baseless claims to the contrary, there is no evidence that Mr. Amadeo ever had or attempted to have any physical contact with any child, including when he himself was a child.  The Court should reject the government's claim that Mr. Amadeo, a 38-year-old man who has never had sexual relations with anyone, is a "sexual predator."  ECF No. 114 at 13.

The government relates the unsupported allegations of a supposed "Victim."  The only discovery the government has provided concerning these allegations is a January 25, 2022 HSI Report of Investigation ("ROI") summarizing HSI Special Agents Jordan Oliveira and Brendan Lundt's 45-minute interview of an unidentified adult woman at the HSI New Haven office.  Exhibit C (filed under seal).  This woman, described by the government as "the Victim," is more accurately described as a complaining witness ("CW").  The CW claims to be Mr. Amadeo's family friend. *Id.* at 2.

The ROI states that the CW claimed that Mr. Amadeo touched her inappropriately on two occasions, one time in the winter of 1994–1995 (when Mr. Amdeo was 10 years old) and one time in the 1996–1997 timeframe (when Mr. Amadeo was 12 years old).  *Id.* at 3.  The ROI also states that

---

[1] The government states that Mr. Amadeo would be exposed to an even higher statutory mandatory-minimum had he been convicted under a different sub-section of the risk-of-injury statute. However, the alleged offense conduct in Mr. Amadeo's prior case would not have been covered by § 53-21(a)(2), which requires "contact with the intimate parts" of a child, or § 53-21(a)(3), which requires selling a child "for money or other valuable considerations."  Mr. Amadeo has never sold a child and has never inappropriately touched a child.

2

the CW claimed Mr. Amadeo unsuccessfully attempted to touch her inappropriately in approximately 1998, when Mr. Amadeo was approximately 13 years old. *Id.* at 4. Finally, the ROI states that the CW claimed that Mr. Amadeo looked in her "underwear drawer" on two occasions when she was approximately 17–19 years old. *Id.* at 4–5. There is no evidence that the CW has ever made these allegations before to anyone.

The government's response claims that the CW is approximately 2–3 years younger than Mr. Amadeo. ECF No. 114 at 4. There is no support for this assertion in the ROI, which does not state the CW's age and suggests that the CW and Mr. Amadeo are the same age.

It was not appropriate for the government to parrot the CW's unsubstantiated claims in the "Factual Background" section of their memorandum, as if they had anything to do with this case. It is worse that the government did so without providing the Court with any evidentiary support: no affidavit, no declaration, no complaint, and no exhibits at all. It would not be appropriate for the Court to conclude, from this ROI, that any of the interactions described by the CW ever occurred.

The government also makes much of the fact that, in searching the home that Mr. Amadeo shares with his parents, the government found women's underwear and sex toys. ECF No. 114 at 14. These details, in a case where there is no credible evidence that Mr. Amadeo ever touched anyone, are extraordinarily prejudicial, but are not probative of anything, and have nothing to do with the gravity of the offense. The defense strongly objects to the government's inclusion of information that is not relevant to the charged offense and only serves to inflame the sentiments of the reader.

Mr. Amadeo's prior conviction, untested allegations from a family friend, and sex toys have nothing to do with and do not contribute to the gravity of the offense, and none of the atmospheric facts cited by the government dilute the actual risk of physical and psychological harm posed to Mr. Amadeo by mandatory prison time.

If incarcerated, Mr. Amadeo would be victimized and exploited by inmates and staff who do not understand his lack of social cues, inflexible thinking, and poor comprehension of non-verbal communication.  Mr. Amadeo would unintentionally offend people due to his lack of social cues. When they get offended, they might choose to physically assault or sexually assault Mr. Amadeo. *See* ECF No. 103 (citing numerous legal opinions, articles, and scientific studies explaining that people with ASD are at increased risk of physical and sexual abuse, including in prison).  Mr. Amadeo, who is 38 years old, has never had sex.  He does not want to have sex for the first time, against his will, in federal prison.  *See, e.g.*, David M. Siegal, Note, *Rape in Prison and AIDS: A Challenge for the Eighth Amendment Framework of* Wilson v. Seiter, 44 STAN. L. REV. 1541, 1545 (1992) ("Rape in prison occurs brutally and inevitably . . . [o]ften, the younger, smaller, or less streetwise inmates are the victims.").

Mr. Amadeo does not know how to fight and would not be able to defend himself.  He is only 5'3" in height, at least six inches shorter than the average height for a man in the United States. *See United States v. Lara*, 905 F.2d 599 (2d Cir. 1990) (upholding downward departure grounded on defendant's particular vulnerability to victimization in prison due to his diminutive size and immature appearance); *United States v. Delgado*, 994 F. Supp. 143, 145 (E.D.N.Y. 1998) ("Defendant's diminutive size, and lachrymose and meek demeanor will make her life in prison particularly difficult"); *United States v. Mena*, 968 F. Supp. 115, 117 (E.D.N.Y. 1997) ("Given defendant's appearance, reaction to stress, suggestibility, gullibility and dependence, he will probably make a poor adjustment to prison.  He is particularly susceptible to abuse and manipulation by other inmates. He is an easy target, and likely to be preyed upon.").

The government argues that Mr. Amadeo has not identified a case in which a mandatory-minimum term of imprisonment was found to violate the Eighth Amendment because the

4

defendant had ASD.  ECF No. 114 at 16.  Defense counsel is not aware of such a case.  However, all cases to the contrary cited by the government are from other circuits (*see id.* at 16–17), and counsel is also not aware of a Supreme Court or Second Circuit Court of Appeals opinion precluding the constitutional argument raised in Mr. Amadeo's motion to dismiss.  Moreover, significant ideological support for this argument can be found in numerous Supreme Court opinions holding that differences in maturity, accountability, and brain development inform the protections of the Eighth Amendment's prohibition on cruel of unusual punishment for people under the age of 18.  *See Jones v. Mississippi*, 141 S. Ct. 1307, 209 L.Ed.2d 390 (2021); *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Miller v. Alabama*, 567 U.S. 460 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005).  Defense counsel is also confident that, as society evolves, a court will eventually recognize that mandatory-minimum prison sentences for people with ASD are inhumane. It can start here.

II.      **Mr. Amadeo's Motion Is Ripe for Adjudication.**

Mr. Amadeo's motion is ripe because he is charged with an offense that carries a *mandatory* 5-year term of imprisonment.  The harm to Mr. Amadeo is not merely speculative and does not depend upon some contingent future event.  The government has elected to charge Mr. Amadeo by indictment with an offense carrying a 5-year mandatory-minimum term of imprisonment, has opposed Mr. Amadeo's motion to dismiss the indictment, and has not signaled any willingness to substitute a lesser charge.  Absent a motion under U.S.S.G. § 5K1.1, the Court is required by statutory law to sentence Mr. Amadeo to at least five years in prison for this offense.  Therefore, the purely legal question of whether this charge is constitutional as applied to Mr. Amadeo is fairly before the Court.

Alternatively, to the extent the Court finds that Mr. Amadeo's motion is not ripe, Mr. Amadeo respectfully requests that the Court defer decision on this motion until a conviction is entered, and

then provide the parties with an opportunity to provide supplemental briefing at that time.

The Court might also encourage the government to substitute a more appropriate charge, *i.e.*, one which would give the Court the power to decide whether and what amount of imprisonment would be appropriate in this case. Such a resolution would be particularly suitable for this case because courts have recognized that (other than the mandatory minimum) there is virtually no distinction between possessing and receiving child pornography. Especially when it comes to child pornography viewed or downloaded on a computer, receipt and possession generally constitute the same act. *See United States v. Robinson*, 669 F.3d 767, 776 n.2 (6th Cir. 2012) ("[S]tanding alone, the current statutory scheme makes no principled distinction between possessing and receiving child pornography, which can often times be virtually identical conduct, but nonetheless results in vastly different mandatory sentencing ranges."); *United States v. Weisser*, 417 F.3d 336, 347 n.8 (2d Cir. 2005) (recognizing that "'possessors, unless they fabricate their own pornography, are also receivers.'" (quoting *United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001))). The only meaningful difference between receipt and possession is that receipt carries a 5-year mandatory-minimum term of imprisonment, a term that is grossly disproportionate as applied to Mr. Amadeo. A substitute charge not carrying a mandatory minimum would also moot this motion, allowing the finite resources of the Court, the government, and the Federal Public Defender's Office to be deployed elsewhere in the public service.

## CONCLUSION

"Governments must prevent unnecessary institutionalization of people with disabilities." U.S. Dep't of Justice, Civil Rights Division, Examples and Resources to Support Criminal Justice Entities in Compliance with Article II of the Americans with Disabilities Act (Jan. 2017), *available at* https://archive.ada.gov/cjta.html. Mr. Amadeo has severe cognitive and psychiatric disabilities

that put him at extraordinary risk of physical abuse, sexual abuse, or suicide in a prison environment. He has continually discussed thoughts of suicide since the start of this case.  In counsel's experience, Mr. Amadeo's "recurrent, near daily ruminations about ways in which he would commit suicide" are extraordinarily rare and extremely concerning.  Exh. A at 4.  Imposing a mandatory term of imprisonment on Mr. Amadeo would "transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  *Hurd v. Fredenburgh*, 984 F. 3d 1074, 1085 (2d Cir. 2021) (internal quotation marks and citation omitted).  For the foregoing reasons, and those raised in Mr. Amadeo's motion, a sentence of 5 years' imprisonment without parole for Mr. Amadeo would be grossly disproportionate to the offender and the offense and would constitute a cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

Respectfully Submitted,

THE DEFENDANT,
Joseph Amadeo

FEDERAL DEFENDER OFFICE

Date:  January 31, 2023

*/s/ Tracy Hayes*
Tracy Hayes
Assistant Federal Defender
265 Church Street, 7th FL
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: phv06527
Email: tracy_hayes@fd.org

Andrew P. Giering
Research and Writing Specialist
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: ct29332
Email: andrew_giering@fd.org

7

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 31, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Tracy Hayes*
Tracy Hayes