**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------ x
UNITED STATES OF AMERICA   :
 :
 :
v.   :   Criminal No. 3:22-cr-90(AWT)
 :
JOSEPH AMADEO   :
 :
 :
------------------------------ x

## RULING ON RENEWED MOTION TO DISMISS INDICTMENT

The defendant, Joseph Amadeo, previously moved to dismiss the indictment in this case, which charges him with one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1) and carries a five-year mandatory minimum sentence. The court denied that motion to dismiss because it was not ripe. See Order on Motion to Dismiss (ECF No. 120). Since that ruling, the defendant has entered a guilty plea, and he has filed a renewed motion to dismiss the indictment that is ripe. For the reasons set forth below, his renewed motion to dismiss the indictment is being denied.

I.   **Background**

The defendant contends that "[i]mposition of a mandatory 5-year prison sentence, as applied to Mr. Amadeo, would violate the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution." Def.'s Renewed Mot. to Dismiss Indictment (ECF No. 180) at 1. He

-1-

asserts that "[i]n this case, five years, or indeed any time in prison, is excessively harsh and grossly disproportionate to Mr. Amadeo's criminal conduct." Id. He argues that "[p]unishing Mr. Amadeo with incarceration would be especially disproportionate to the offense conduct because his ASD contributed to the offense conduct and is a mitigating factor." Id. at 9. He maintains that "the Court should dismiss the indictment without prejudice to the government substituting another charge that would not require a term of imprisonment, but would instead allow the Court to decide whether, and how much, time in federal prison is necessary in this case." Id. at 1.

    With respect to his psychological condition, the defendant maintains:

>     Mr. Amadeo is 38 years old and suffers from autism
>     spectrum disorder (ASD), attention deficit
>     hyperactivity disorder (ADHD), major depressive
>     disorder, anxiety disorder, obsessive compulsive
>     disorder, and unspecified personality disorder with
>     self-defeating and schizoid features. Exh. A at 9. Mr.
>     Amadeo is psychiatrically disabled (id. at 1) and has
>     received Social Security Disability benefits since
>     approximately 2008, when he was 24 years old (id. at
>     3).

Id. at 2.

    The defendant presents a number of additional arguments in support of his position that the most significant factor the court should consider "is the harshness and difficulty of the conditions of incarceration that Mr. Amadeo is likely to

encounter," id. at 4, including the following:

    a. "ASD patients are frequently the target of abuse, and especially vulnerable in a prison environment. Because Mr. Amadeo is not able to satisfactorily relate to other inmates due to his ASD, that he will be victimized due to his lack of ability to understand social cues." Id.

    b. "Autistic prisoners are more likely to experience bullying and exploitation from other inmates." Id. at 6.

    c. "[A] defendant such as Mr. Amadeo may end up in solitary confinement in order to protect him from exploitation and harassment by other inmates. Time served in restricted housing units like that can significantly exacerbate the condition of a person who is already suffering from mental health problems." Id. at 10.

    d. "Those with ASD are also at increased risk of sexual abuse." Id. at 6.

    e. "Furthermore, prison does not provide people with ASD with the rehabilitative benefits that it might afford neurotypical individuals." Id. at 7.

    f. "Incarceration of Mr. Amadeo may also cause him to commit suicide, to attempt self-harm, or to regress psychologically." Id. at 4.

    g. "With a sex offender conviction, Mr. Amadeo would be ineligible for designation to a minimum-security

facility, even though he has never been in prison before, and this would be his first term of incarceration." Id. at 7.

h. "The Defense submits that Mr. Amadeo is 'not a sexual predator' (id. at 7); rather, he is 'a collector and a hoarder' (ibid.) who suffers from a mental illness which interferes with his ability to connect socially with others . . . ." Id. at 7.

## II.  **Discussion**

"Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" Graham v. Florida, 560 U.S. 48, 59 (2010) (alteration in original) (quoting Weems v. United States, 217 U.S. 349, 367 (1910)). There are two ways to challenge a sentence's proportionality: (1) by asserting an as-applied challenge that the length of a term-of-years sentence is disproportionate "given all the circumstances in a particular case;" and (2) by asserting a categorical challenge that an entire class of sentences is disproportionate based on the "nature of the offense" or "the characteristics of the offender." Id. at 59-60.

With respect to an as-applied challenge, which the defendant asserts here, "the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict

proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" Id. at 60 (quoting Harmelin v. Michigan, 501 U.S. 957, 997, 1000-01 (1991)).

> In making a case-particular assessment of proportionality, the Court has employed a two-step analysis, first "comparing the gravity of the offense and the severity of the sentence." [Id.]. Given the principles already discussed, the Court has observed that it will be "'the rare case in which this threshold comparison . . . leads to an inference of gross disproportionality.'" Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring) (first alteration in Graham omitted)). Should such an inference arise, however, the second step of the analysis requires a court to "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." Id. Only "[i]f this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate'" will the sentence be deemed "cruel and unusual." Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring) (alterations in original)).

United States v. Reingold, 731 F.3d 204, 211 (2d Cir. 2013).

In Reingold, the court recognized the immense social harm flowing from the defendant's offense of conviction:

> As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

Id. at 216. Thus, receipt of child pornography is appropriately

viewed as a very serious offense.

In addition, with respect to the circumstances of this particular case, the court agrees with the government that "[t]he gravity of Amadeo's offense is only exacerbated by the facts of the case." Gov. Opp. to the Def.'s Renewed Mot. to Dismiss (ECF No. 197) at 13. It is noteworthy that this is the defendant's second conviction based on his involvement with child pornography. See id. at 3 ("On December 20, 2013, Amadeo was convicted of risk of injury to a child in violation of Connecticut General Statutes Section 53-21(a)(1), for downloading and sharing child pornography on a peer-to-peer file sharing network ("P2P") and was sentenced to 10 years' jail, all of which was suspended, 5 years' probation, and 10 years on the sex offender registry."). Also, as the government notes:

> He is a sex offender, and the facts of his previous conviction are very similar to those in the instant case. But in this case, his conduct is significantly worse, and he has only grown more sophisticated with time. In his first case, he used a P2P, but in this case, he was on the dark web. . . . As previously discussed, the search of Amadeo's electronic devices revealed thousands of images and videos depicting the horrific sexual abuse of children as young as toddlers. He possessed writings concerning the same. As previously discussed, investigators located numerous pairs of children['s] underwear, covered in what was likely Amadeo's own bodily fluid. Amadeo admitted that at least some of the underwear belonged to actual children, V1 and V2, and he had kept their underwear for many years.

Id. at 14.

It is also noteworthy that when Amadeo was interviewed during the execution of the warrant in connection with his prior conviction he "admitted to using two computers-including one computer he built himself—to download and share child pornography." Id. at 3. Moreover, he admitted "to being sexually aroused by child pornography and stated that the youngest child he had seen pornographic images of 'was probably an infant.' Amadeo told the detectives, 'I like the excitement of knowing that I can look at these types of photos [and] can get away with it.'" Id. (alteration in original).

With respect to severity of the sentence, as noted above, the defendant makes a number of arguments in support of his position that the harshness and difficulty of the conditions he is likely to encounter make the five-year mandatory sentence in this case grossly disproportionate.

The government questions the reliability of the evaluation by Dr. George Geysen, on which the defendant relies in describing his psychological condition, and the defendant's position that ASD contributed to the offense conduct and is a mitigating factor. The government also contends that "research has refuted the claim that ASD affects a subject's propensity to engage in criminal activity." Id. at 17. The court does not need to resolve the areas of disagreement for purposes of the instant motion. Even accepting, for purposes of the instant motion only,

the defendant's characterization of his psychological condition,
this is not a case where comparing the gravity of the offense
and the severity of the sentence leads to an inference of gross
disproportionality.

With respect to the defendant's arguments concerning the
experiences of autistic prisoners, the Declaration of BOP Dr.
Christine Anthony supports the government's position that "[t]he
Bureau of Prisons ("BOP") is well- equipped to house Amadeo. BOP
regularly houses offenders, including sex offenders, with ASD
and other diagnoses." Id. at 14. In its opposition, the
government accurately summarizes Dr. Anthony's description of
step's the BOP takes with respect to "the treatment and care of
those individuals with a diagnosis of autism spectrum disorder
and who may also have current charges involving sexual offense."
Decl. of BOP Dr. Christine Anthony (ECF No. 197-2) ¶ 7.

> In the declaration, Dr. Anthony articulates the
> process by which new inmates are screened for an
> appropriate institution designation. She explains that
> the BOP carefully considers an inmate's CARE Level
> under the BOP's medical or mental health
> classification system which influences the institution
> designation. She notes that regardless of the
> designated institution, all inmates are assigned to a
> Primary Care Provider Team to ensure essential care.
> BOP also utilizes intake screenings to evaluate any
> safety concerns for inmates and, where needed, may
> assign an inmate to a particular housing unit or bed
> to alleviate safety concerns.
>
> Dr. Anthony specifically describes the programs
> related to treating individuals with a diagnosis of
> autism spectrum disorder who may have been convicted

> of charges involving a sexual offense. She explains
> that such inmates may be placed into the SKILLS
> program, which is specifically designed to improve the
> institutional adjustment of inmates with intellectual
> and social impairments. While only some of the inmates
> in the SKILLS programs have been convicted of sex
> offenses, Dr. Anthony also describes BOP's Residential
> Sex Offender Treatment Program and Non-residential Sex
> Offender Treatment Program which provide more tailored
> treatment options for sex offenders.

Gov. Opp. to the Def.'s Renewed Mot. to Dismiss at 20-21.

The court also credits the penultimate paragraph of Dr.

Anthony's Declaration, which reads as follows:

> Whether assigned to a BOP facility with the Skills
> Program or a standard BOP facility, BOP offers
> treatment to inmates diagnosed with autism spectrum
> disorder commensurate with their determined CARE
> level. Currently, there are 175 inmates designated to
> various BOP facilities who are diagnosed with autism
> spectrum disorder. They are designated to various BOP
> facilities throughout the country, in addition to the
> two locations with the Skills Program.

Decl. of BOP Dr. Christine Anthony ¶ 12. Thus, the defendant has

not shown that the conditions of incarceration he is likely to

endure as a result of the fact that he has a diagnosis that

includes autism spectrum disorder would cause any sentence at or

above the mandatory minimum sentence in this case to be

disproportionately severe for purposes of the Eighth Amendment.

With respect to the defendant's argument that imprisonment

may cause him to harm himself, the court credits Dr. Anthony's

description of the process the BOP follows to determine an

offender's CARE Level. Also, she explains, "CARE Level 2 inmates

require routine outpatient mental health care and/or temporary crisis prevention services – such as suicide watch." Id. ¶ 3.

The defendant argues that he will be ineligible for designation to a minimum security facility even though he has never been in prison before. The court does not place material weight on this argument in light of the defendant's prior ten-year suspended sentence based on his downloading and sharing of child pornography.

Finally, the government has effectively rebutted the defendant's argument that he is merely a collector and a hoarder, and not a sexual predator, with evidence with respect to V1 and V2 described at pages six and seven of the government's opposition.

Because comparing the gravity of the offense and the severity of the sentence does not lead to an inference of gross disproportionality, the court does not reach the second step of the two-step analysis set forth in Reingold.

## III. **Conclusion**

For the reasons set forth above, the defendant's Renewed Motion to Dismiss Indictment (ECF No. 180) is hereby DENIED.

It is so ordered.

Dated this 3rd day of January 2024, at Hartford, Connecticut.

```
                              /S/
                    _____
                       Alvin W. Thompson
                    United States District Judge
```